*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## MEMORANDUM OPINION

No. 04-09-00280-CR

John **SOTO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-10196
Honorable Pat Priest, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
         Phylis J. Speedlin, Justice
         Marialyn Barnard, Justice

Delivered and Filed:  October 29, 2010

AFFIRMED

A jury convicted John Soto of eleven counts of aggravated sexual assault of a child. Pursuant to Soto's election, the jury assessed punishment at confinement for ninety-nine years on nine counts, twenty years on another count, and twenty-five years on the remaining count. The trial court ordered the sentences to run concurrently. On appeal, Soto contends the trial court erred by: (1) denying his motion to suppress; (2) denying his motion to quash the indictment; (3)

---

[1]The Honorable Pat Priest was sitting by assignment.

excluding certain evidence; (4) overruling his objection to the testimony of Dr. Nancy Kellogg concerning diagnostic impressions and normal sexual examinations; and (6) overruling his objection requesting complainant's mother's testimony be stricken from the record based on a violation of rule 614 of the Texas Rules of Evidence.

## BACKGROUND

Soto has not challenged the sufficiency of the evidence to support his conviction. Accordingly, a detailed rendition of the facts is unnecessary, and we provide only the factual background necessary for context.

Complainant, C.L., first came into contact with Soto when he was a twelve-year-old fifth grader. According to C.L., Soto approached him one day after school and asked if C.L. would like to play on Soto's summer football team. C.L. stated Soto offered him $50.00 in exchange for his agreement to play on the team. C.L., with his parents' permission, agreed. Over the course of the summer, Soto gave C.L. rides to and from practices and games, and the two developed a relationship. C.L. testified the relationship ultimately changed, beginning when Soto put his hand on C.L.'s leg during a ride home.

C.L. testified the first incident of sexual abuse occurred after Soto took C.L. dirt biking. When the two returned to Soto's house, C.L. went inside to shower. After showering, C.L. claims Soto then sexually assaulted him by performing oral sex on him. Afterwards, according to C.L., Soto apologized and drove C.L. home. C.L. recalled that during the summer more than five such incidents occurred in which Soto performed oral sex on C.L. C.L. testified things escalated and ultimately C.L. performed oral sex on Soto, and Soto anally assaulted C.L. C.L. stated that during the time he was in contact with Soto, Soto assaulted him anally at least twelve times–sometimes at Soto's house, and sometimes at C.L.'s house. C.L. stated that when he

attempted to stop the sexual assaults, Soto would beat C.L. with his fists and threaten the safety of C.L.'s family until C.L. complied. C.L. also testified Soto forced C.L. to watch pornographic videos depicting men and women having anal sex. C.L. stated he sent nude photographs of himself to Soto.

According to C.L., the incidents ceased when Gabrielle Knight, C.L.'s mother, came home unexpectedly, interrupting Soto's sexual assault of C.L. Knight recalled Soto rushing into a nearby bathroom before she could enter the room. According to Knight, Soto apologized and claimed he was not feeling well. Knight was suspicious, so when Soto emerged from the bathroom, Knight informed Soto that he was not allowed in her house unless she was there.

Knight testified other events had aroused her suspicions as well. On one occasion, she discovered a threatening text message sent to C.L. from "Paul."[2] Concerned, Knight took C.L.'s laptop and phone[3], which were given to C.L. by Soto, to the police and requested they look into the matter. Although no specific allegations were made at this time, subsequent forensic analysis of the phone and computer uncovered data that concerned Detective Lisa Miller. Immediately thereafter, Detective Miller subpoenaed the cell phone records of the phone formerly in C.L.'s possession as well as Soto's phone records. These records indicated that from February 12 to April 12, 2006, more than 800 phone calls were exchanged between C.L. and Soto.[4] Detective Miller also subpoenaed AT&T Internet records to determine who owned the e-mail address "turtle3379@sbcglobal.net." This inquiry revealed Soto was the account holder of "turtle3379" as well as eighteen other e-mail accounts.

---

[2]According to Soto, "Paul" was a friend of his who sent the message to C.L. as a joke.

[3]According to C.L., Soto instructed C.L. to tell his mother that the phone was a gift from his girlfriend "Sue."

[4]According to Detective Miller's testimony, text messages are recorded by Sprint, the carrier in this case, as one minute phone calls.

After three unproductive interview attempts with C.L., Detective Miller contacted FBI Special Agent Rex Miller, and requested he interview C.L at C.L.'s home. Agent Miller was able to obtain information from C.L. that gave Detective Miller sufficient probable cause for a search warrant for Soto's home and a warrant for his arrest. Soto was arrested and ultimately convicted of several counts of aggravated sexual assault of a child. He then perfected this appeal.

## ANALYSIS

### *Motion to Suppress*

In his first point of error, Soto contends the trial court erred in denying his motion to suppress. We disagree.

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court does not conduct its own factual review; rather, deference is given to the trial judge as the sole trier of fact, judge of the witnesses' credibility, and the respective weight to be given to their testimony. *Weide v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Because the trial court is in the best position to observe the witnesses' appearance and demeanor, the trial court is the sole judge of the truthfulness of the witnesses' testimony. *See Ross*, 32 S.W.3d at 855. Although great deference is given to the trial court's evaluation of historical facts, we review the court's application of the law pertaining to those facts under a de novo standard. *Amador*, 221 S.W.3d at 673. All evidence in a trial court's motion to suppress ruling is viewed "in the light most favorable to the trial court's ruling." *State v. Iduarte*, 268

S.W.3d 544, 548 (Tex. Crim. App. 2008); *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). And, a trial court's ruling will be upheld so long as support exists in the record and the theory of law applied to the facts is correct. *Iduarte*, 268 S.W.3d at 548.

Soto claims the trial court erred in denying his motion to suppress because Detective Miller's affidavit, which supported the search warrant, contained deliberate falsehoods or statements made in reckless disregard of the truth. Soto specifically challenges Paragraphs D and F of the affidavit. Soto first argues that the statements in Paragraph D of the affidavit, which allege over 800 phone calls between Soto and C.L. between February 12 and April 12, 2006, were made to deliberately mislead the magistrate into believing each listed phone call in the records was an actual voice conversation, rather than a series of daily text messages. Soto contends the affiant's statements ignored the possibility of innocent one-word text message exchanges, and created a false appearance of an improper relationship between an adult and child.

Soto also contends Paragraph F, which contained C.L.'s allegation that he sent nude photographs of himself to Soto at Soto's request, was false, and included in the affidavit to induce the magistrate to find probable cause to issue the warrant. Soto supports his contention by showing the allegation was unsubstantiated after a search of Soto's home.

Soto contends that but for Paragraphs D and F, there would not have been sufficient probable cause for a warrant, and the trial court erred in not striking those paragraphs and granting his motion to suppress.

Under *Franks v. Delaware*,

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment

> requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. 154, 155-56 (1978); *see Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) (adopting *Franks* standard). The Texas Court of Criminal Appeals has made it clear that to be entitled to a *Franks* hearing a defendant must:

> (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant.

*Harris*, 227 S.W.3d at 83 (citing *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003) (quoting *Ramsey v. State*, 579 S.W.2d 920, 922-23 (Tex. Crim. App. 1979)). Apparently deciding Soto made the initial showing required by *Franks* and *Harris*, the trial court held a hearing based on Soto's allegations. During this hearing, Soto questioned Detective Miller regarding the information included in her affidavit. According to Detective Miller, information pertaining to the "more than 800 calls" between Soto and C.L. was derived from the cell phone records. She denied her statements relating to the calls were erroneous or false. Soto's argument challenging the failure of the affiant to differentiate between voice calls and text messages was covered at the hearing during the examination of Detective Miller. Detective Miller explained that "[n]ormally the text messages will show up as, like, a one-minute call." The alleged innocent nature of the exchanges between Soto and C.L. was suggested by Soto at the hearing, but he did not support his allegations with any evidence. Even if she failed to consider the potential innocent nature of the eight hundred plus exchanges, this amounted to nothing more

than negligence on the part of Detective Miller, and "[a]llegations of negligence or innocent mistake are insufficient" to warrant striking portions of an affidavit. *Franks*, 438 U.S. at 173.

As to the statements contained in Paragraph F of the affidavit and Soto's claim that the statements therein were included to deliberately mislead the magistrate into believing that this picture would be found at Soto's home or on his computer, we disagree with Soto's contention that the police should have first verified if they had possession of a photograph by examining the contents of C.L.'s computer before including the statement in the affidavit. We also reject his contention that the results of this search should have been included in the affidavit because it was relevant to the implication that Soto possessed child pornography. According to Soto, because the allegation was "completely unsubstantiated," this statement was meant to mislead the magistrate into believing probable cause existed.

According to *Franks*, the Fourth Amendment's requirement for a truthful showing of probable cause does not mean:

> . . . "[T]ruthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks*, 438 U.S. at 164-65; *see Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). Detective Miller's statements were properly included in the affidavit because she believed and accepted the information set forth in the affidavit as true. *See id.*

We agree with Soto that *Franks* requires that any information, which is shown by a preponderance of the evidence to be false or deliberately misleading, be struck from the search warrant affidavit. *See Franks*, 438 U.S. at 156; *Harris*, 227 S.W.3d at 85. And, a warrant will be deemed void only if the remaining information contained in the affidavit is insufficient to

establish probable cause. *Franks*, 438 U.S. at 156; *Harris*, 227 S.W.3d at 85. However, we hold the trial court did not abuse its discretion by refusing to strike the complained of statements from the affidavit. The trial court determined that the information contained in the affidavit was not made in "reckless disregard for the truth that is mandated by Franks versus Delaware." Because the statements were properly part of the affidavit, we hold the motion to suppress was properly denied.

Even if we assume Paragraphs D and F should have been struck from the affidavit, we hold the affidavit would still have supported the issuance of the search warrant. Detective Miller's affidavit states AT&T Internet records established Soto was the accountholder of e-mail address "turtle3379@sbcglobal.net." This was suspicious given that C.L. claimed Soto introduced him to a girl named "Sue" who apparently used the screen name "turtle3379." C.L. also told the authorities Soto added "Sue" to his friend list so they could begin communicating on Yahoo Instant Messenger. Forensic analysis of C.L.'s computer, which was given to him by Soto, revealed conversations between C.L.'s, "undecided1992," and "turtle3379," in which the two discussed C.L.'s romantic relationship and sexual activity with an unnamed male.

Another paragraph in the affidavit recapitulates the major points of C.L.'s interview with FBI special agents where he described several instances of forced sexual conduct with Soto. C.L. also stated, and the affidavit relayed, Soto threatened C.L.'s life if C.L. ever told anyone about the sexual contact. In one instance, Soto allegedly placed a knife to C.L.'s neck while making such a threat.

The information regarding the e-mail conversations and that obtained from C.L.'s interview with federal authorities was sufficient to give rise to probable cause to search Soto's

home. Therefore, even excluding Paragraphs D and F from the affidavit, we hold there was sufficient evidence to support the warrant.

### *Motion to Quash*

Soto next contends the trial court erred by overruling his motion to quash the indictment. Soto was indicted on November 14, 2007, on nineteen counts of aggravated sexual assault of a child, which allegedly took place between June 15, 2005 and March 18, 2006.[5] Soto filed a motion to quash the indictment, which was denied. Soto filed a second motion to quash, which was also denied. In support of this issue, Soto argues that although he was provided adequate time for discovery, he was not placed on notice of the specific offenses he allegedly committed. He further alleges there was insufficient information regarding the specific offenses to allow him to adequately prepare for trial.[6]

A trial court's decision denying a motion to quash an indictment is reviewed de novo. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Once a motion to quash is timely filed, the indictment must be analyzed to determine whether it states on its face the facts necessary to allege that an offense was committed, to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged." *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex. Crim. App. 1988) (citing *American Plant Food v. State*, 508 S.W.2d 598, 603 (Tex. Crim. App. 1974)); *Rotenberry v. State*, 245 S.W.3d 583, 586

---

[5]Soto was first indicted on April 17, 2007, on nine counts of aggravated sexual assault of a child, which allegedly occurred between November 3, 2005 and March 18, 2006. However, after authorities interviewed C.L., they discovered the alleged offenses occurred nine months earlier than previously thought. Accordingly, the State dismissed the first indictment and later re-indicted Soto to accurately reflect the timeline of the alleged offenses.

[6]The State contends Soto waived his right to complain about denial of his motion to quash. However, we hold Soto preserved his complaint by filing two motions to quash, both of which were filed before trial began. *See* TEX. CODE CRIM. PRO. ANN. ART. § 1.14 (b) (West 2005) (stating defendant waives right to object to defect, error, or irregularity in indictment only if he fails to object before the date upon which trial commences).

(Tex. App.—Fort Worth 2007, pet. ref'd). This requirement is codified in article 21.11 of the Texas Code of Criminal Procedure:

> An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.

TEX. CODE CRIM. PRO. ANN. ART. § 21.11 (West 2009). Additionally, article I, section 10 of the Texas Constitution requires that the notice provided to the accused be clear from a reading of the indictment. TEX. CONST. art. I, § 10; *Livingston v. State*, 739 S.W.2d 311, 321 (Tex. Crim. App. 1987); *Moore v. State*, 532 S.W.2d 333, 335 (Tex. Crim. App. 1976).

The indictment must be viewed as a whole in order to determine if the offense is sufficiently charged in the indictment. *DeVaughn*, 49 S.W.2d at 67 (citing *Dennis v. State*, 647 S.W.2d 275, 279 (Tex. Crim. App. 1983); *Church v. State*, 552 S.W.2d 138, 140 (Tex. Crim. App. 1977)). Additionally, the notice offered by the indictment must be examined in a light most favorable to the accused, keeping in mind his presumption of innocence under the constitution. *DeVaughn*, 749 S.W.2d at 68 (citing *King v. State*, 594 S.W.2d 425, 426 (Tex. Crim. App. 1980)).

The indictment in this case stated, in pertinent part:

Count I

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the ANUS of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

Count II

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the MOUTH of THE DEFENDANT;

Count III

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

Count IV

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the MOUTH of THE DEFENDANT;

Count V

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the ANUS of THE DEFENDANT;

Count VI

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the ANUS of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

Count VII

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the ANUS of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

Count VIII

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

Count IX

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the MOUTH of THE DEFENDANT;

Count X

on or about the 15th Day of June, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the ANUS of THE DEFENDANT;

Count XI

on or about the 5th Day of October, 2005, JOHN SOTO, hereinafter referred to as defendant, with the intent to arouse or gratify the sexual desire of any person, expose PART OF HIS GENITALS, knowing that [C.L.], A MALE CHILD YOUNGER THAN SEVENTEEN (17) YEARS, was present;

## Count XII

on or about the 3rd Day of November, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly engage in sexual contact with [C.L.], A MALE CHILD YOUNGER THAN SEVENTEEN (17) YEARS by causing [C.L.] to touch PART OF THE GENTIALS of THE DEFENDANT with the intent to arouse or gratify the sexual desire of any person;

## Count XIII

on or about the 3rd Day of November, 2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

## Count XIV

on or about the 28th Day of January, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the MOUTH of THE DEFENDANT;

## Count XV

on or about the 28th Day of January, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly engage in sexual contact with [C.L.], A AMLE CHILD YOUNGER THAN SEVENTEEN (17) YEARS by touching PART OF THE GENTIALS of [C.L.] with the intent to arouse or gratify the sexual desire of any person;

## Count XVI

on or about the 18th Day of March, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

## Count XVII

on or about the 18th Day of March, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the ANUS of [C.L.], a child who was younger than 14 years, by THE DEFENDANT'S SEXUAL ORGAN;

## Count XVIII

on or about the 18th Day of March, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14 years, to PENETRATE the ANUS of THE DEFENDANT;

## Count XIX

on or about the 18th Day of March, 2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly engage in sexual contact with [C.L.], A MALE CHILD YOUNGER THAN SEVENTEEN (17) YEARS by causing [C.L.] to touch PART OF THE GENTIALS of THE DEFENDANT with the intent to arouse or gratify the sexual desire of any person;

It is clear from a reading of the indictment that sufficient information is stated to enable Soto to prepare an adequate defense.  *See* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PRO. ANN. ART. § 21.11; *DeVaughn*, 49 S.W.2d at 67.  The indictment provides the date of each alleged offense, the culpable mental state, the statutory elements of each alleged offense, and describes who did what to whom.  This is sufficient under the constitution, the code of criminal procedure, and interpretive case law.  *See id.*  We therefore hold that the trial court did not err in denying Soto's motion to quash, and overrule this point of error.

### *Exclusion of Evidence*

In his third and fourth points of error, Soto contends the trial court abused its discretion by limiting his ability to elicit testimony from C.L. in three areas: (1) a juvenile felony theft case, which was taken into consideration as part of a plea agreement in a juvenile burglary case; (2) a fight between C.L. and his older brother; and (3) counseling C.L. received for inappropriately touching another child, which occurred before the sexual assaults by Soto.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  The trial court does not abuse its discretion if its ruling lies within the "zone of reasonable disagreement," and such a ruling must be upheld.  *Id.*  A ruling is erroneous only if it "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."  *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

*Juvenile Felony Theft*

On January 8, 2008, C.L. pleaded true, in juvenile court, as a party to burglary of a habitation.  As part of a plea agreement, three other pending cases were taken into consideration:

- 13 -

(1) possession of marijuana, zero to two ounces; (2) state jail felony theft; and (3) unauthorized use of a motor vehicle.

At a hearing outside the presence of the jury, Soto's counsel informed the court that he intended to question C.L. about the felony theft and unauthorized use of a motor vehicle. Relevant to these issues, the following exchange took place:

[Soto's Counsel]: . . . [C]ertainly the felony theft that was taken into consideration where [C.L.] would have to say that it was true that he did those things in order to have it taken into consideration, I've got that felony[.]

The Court: State.

[The State]: Our position is that, given his juvenile status, that the defense counsel should not necessarily be allowed to go into those matters[.]

The Court: Do you have any legal authority for the admissibility of felonies that were taken into consideration as distinguished from resulting in adjudication?

[Soto's Counsel]: . . . I do not have a case on point.

The Court: Okay . . . I rule that the burglary of a habitation and his status as a probationer in that case is admissible.

[The State]: Okay.

The Court: But none of the rest of it.

[Soto's Counsel]: I understand.

The Court: If you find me a case that causes me to reconsider, I'll do it, but that's my ruling right now.

[Soto's Counsel]: I understand . . . and did want the record to reflect that for these cases to have been dismissed, and they were taken into consideration as simply being dismissed, the Respondent in that case would have to admit that he, in fact, did commit the offenses that he had been accused of committing.

[The State]: But – Okay.

The Court: That is true.  My ruling remains the same unless you show me some authority.

On appeal, Soto argues evidence of C.L.'s juvenile felony theft was admissible under rule 404(a)(2) of the Texas Rules of Evidence, which provides that evidence of a pertinent character trait of a victim is admissible when offered by the accused. TEX. R. EVID. 404(a)(2). However, nothing in the above-quoted exchange establishes Soto informed the court that it was seeking admission of the evidence pursuant to rule 404(a)(2). To preserve an issue for appellate review, rule 33.1 of the Texas Rules of Appellate Procedure requires the appellant to have made "a timely request, objection, or motion that stated the ground for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX. R. APP. P. 33.1(a)(1)(A). Soto's objection was not made "with sufficient specificity to make the trial court aware of the complaint" or to allow this court to determine the grounds of the request. *See id.*; *Wilson v. State*, 71 S.W.3d 346 (Tex. Crim. App. 2002) (stating preservation of error requires complaining party to raise specific objection and acquire ruling on that objection). Soto's appellate contention that C.L.'s felony theft was admissible under rule 404(a)(2) was not presented to the trial court, nor was it apparent from the record. In fact, when the trial court specifically asked Soto's counsel for legal support favoring admissibility, counsel conceded he had none. Soto's counsel asserted no legal basis for his request to admit evidence of the felony theft. Accordingly, we find that Soto waived this issue for purposes of appeal.

## C.L.'s Counseling

At another hearing outside the presence of the jury, Soto questioned C.L. about counseling C.L. received before he met Soto, for "inappropriately touching another child." C.L. admitted he had inappropriately touched a child, and saw a counselor as a result. Soto almost immediately changed his line of questioning to cover a fight C.L. had with his brother. In that

fight, C.L. admitted to standing up to his brother and defending himself. At the conclusion of Soto's questions to C.L., the following exchange occurred:

The Court: Okay. Tell me why you think any of this is admissible.

[Soto's Counsel]: I believe that the second portion is admissible because it goes to the fact that the child knew of, had the ability and had the propensity for physically defending himself against any attackers.

The Court: That's overruled. What else?

[Soto's Counsel]: I believe those are all the issues that I have outside the presence.

Soto contends on appeal the trial court erred when it excluded evidence of counseling C.L. received for inappropriately touching another child. However, Soto never presented an argument for the admissibility of the inappropriate touching or counseling. Rather, counsel skipped over the subject entirely and argued only for the admissibility of a fight C.L. had with his brother. As stated above, to be entitled to appellate review of a trial court's ruling, a timely, specific request that includes the grounds for the ruling sought must be made. TEX. R. APP. P. 33.1(a)(1)(A). Additionally, the complainant must show the trial court ruled on the request or refused to rule, and the complainant objected to the refusal. *Id.* R. 33.1(a)(2). As the exchange between the trial court and Soto clearly illustrates, Soto failed to present a theory regarding the admissibility of the inappropriate touching and counseling evidence, and also failed to obtain a ruling from the trial court with regard to that evidence. Soto seemingly abandoned his request to admit this evidence, arguing only for the admission of the evidence of the fight between C.L. and his brother. We therefore hold Soto waived error regarding the admission of C.L.'s counseling for inappropriate touching.

*Fight with Brother/Officer's Testimony*

As noted above, Soto sought to admit evidence of a fight in which ten or eleven-year-old C.L. threw a knife with a six-inch blade, hitting his older brother in the back of the head. During the fight, C.L. threatened to kill his brother. Soto urged the trial court to admit this evidence, arguing it was "highly relevant to both his tendency to fight when challenged, rather than to submit without reporting it." In other words, by admission of the evidence Soto sought to establish no sexual assault occurred, because if it had, C.L. would have fought and reported it. The trial court overruled Soto's request to admit evidence of the fight.

After the State rested, Soto sought admission of this evidence a second time. This time, however, Soto sought to introduce testimony from the reporting officer, San Antonio Police Officer Mark Bjugstad, who was called to C.L.'s house during this fight. Officer Bjugstad was expected to testify to C.L.'s demeanor during the fight, that C.L. admitted throwing the knife at his brother, and that C.L. threatened his brother if his brother ever attacked him again. The trial court denied Soto's request to admit this evidence. On appeal, Soto argues the trial court erred by denying him the opportunity to question C.L. about the fight with his brother in the presence of the jury. Soto also contends that pursuant to rule 404(a)(2) of the Texas Rules of Evidence, the trial court erred in excluding the testimony of Officer Bjugstad.

Generally, character evidence is inadmissible if offered by a party to prove an individual's actions on a particular occasion were in conformity with his character. TEX. R. EVID. 404(a). However, rule 404(a)(2) provides an exception, which permits admission of "evidence of a pertinent character trait of the victim of the crime offered by an accused." TEX. R. EVID. 404(a)(2). "A pertinent trait is 'one that relates to a trait involved in the offense charged or a defense raised.'" *Stitt v. State*, 102 S.W.3d 845, 849 (Tex. App.—Texarkana 2003, pet.

ref'd) (quoting *Spector v. State*, 746 S.W.2d 946, 950 (Tex. App.—Austin 1988, pet. ref'd)); *see* BLACK'S, LAW DICTIONARY (8th ed. 2004) (defining "pertinent" as pertaining to the issue at hand or *relevant*) (emphasis added). Soto contends C.L.'s fight with his brother is "highly relevant" and should have been presented to the jury because it illustrates the victim's "tendency to fight when challenged." However, Soto fails to show how the victim's propensity to fight when challenged is a pertinent character trait which has any relevance in a sexual assault of a child case. *See Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008) (stating proponent of evidence has burden of proving proffered evidence is admissible). To be relevant, the evidence in question must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Soto fails to show C.L.'s alleged propensity to fight with a sibling is a fact of consequence, which makes the sexual assault less likely to have occurred. Thus, we hold the trial court did not abuse its discretion in refusing to admit the evidence.

We next address Soto's contention that the trial court erred in excluding the testimony of Officer Bjugstad. Soto argues Officer Bjugstad would have testified that during the incident, C.L. used "extreme profanity towards his parents" and threatened to kill his brother. In essence, Soto believed the officer's testimony would illustrate C.L.'s "propensity to stand up to adults when challenged." In this instance, Soto argues C.L. would have cursed at and physically threatened Soto had Soto actually sexually assaulted C.L. This argument fails for the same reasons stated above. C.L.'s propensity or ability to stand up to Soto during a sexual assault is not a valid defense and has no relevance as to whether the act occurred. In fact, C.L. admitted attempting to thwart Soto's sexual assaults, but when he did Soto threatened C.L. and C.L.'s family.

Although Soto contends admissibility is governed by rule 404(a)(2), he in fact challenged the veracity of C.L.'s accusations, stating "[the evidence] is certainly pertinent, in that it [is] directly related to Soto's defense that [C.L.] was not telling the truth when he accused [] Soto." This appears to be an attempt to bypass rule 608(b), which precludes the use of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . on cross-examination of the witness . . . ." TEX. R. EVID. 608(b). Soto's attempt to attack C.L.'s character for truthfulness using Officer Bjugstad's testimony is an impermissible attempt to cast an unfavorable light on the victim. Officer Bjugstad does not have a basis of fact to testify as to C.L.'s character for truthfulness; instead his testimony referencing this specific instance of conduct, at most, would establish C.L. exhibited violent characteristics.

Even assuming it was error to exclude the evidence of the fight and Officer Bjugstad's testimony relating to it, we hold such error was harmless. *See* TEX. R. APP. P. 44.2(b). Soto argued admissibility based on the rules of evidence, i.e., non-constitutional error, and therefore reversal is necessary only if the error affected Soto's substantial rights. We hold the error did not affect Soto's substantial rights, and was therefore harmless.

*Sixth Amendment*

In addition to the errors asserted above, Soto makes a vague allegation that he was denied his Sixth Amendment right to confront the witness against him because his cross-examination of C.L. was limited in the three areas discussed above. However, at trial, Soto did not raise a Sixth Amendment or confrontation clause objection. Constitutional errors, such as the Sixth Amendment claim asserted here by Soto, are waived if not raised at trial. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (holding Sixth Amendment claim waived by failing to object on that basis at trial), superseded by statute on other grounds by TEX. CODE CRIM. PROC.

ANN. art. 37.071 (West Supp. 2010). Accordingly, we hold any complaint based on the Sixth Amendment was waived.

### *Admission of Evidence*

Soto's fifth point of error concerns the testimony of the State's medical expert, Dr. Nancy Kellogg. Dr. Kellogg was called to the stand to interpret the results of C.L.'s sexual assault examination, which was conducted by Dr. Jim Anderst.[7] On appeal, Soto argues Dr. Kellogg's testimony regarding the "diagnostic impression" section of Dr. Anderst's report and her explanation of the significance of a normal examination were "unnecessary and inadmissible" because her testimony did not tell the jury "anything that it could not have deduced on its own," and that the testimony was "a comment on the truthfulness of [C.L.]."

As stated previously, we review the trial court's evidentiary rulings under an abuse of discretion standard. *Powell,* 63 S.W.3d at 438. At trial, Soto, relying on *Salinas v. State*, 166 S.W.3d 368 (Tex. App.—Fort Worth 2005, pet. ref'd), objected only to Dr. Kellogg "drawing any conclusions" from the victim's normal examination and medical history. Thus, Soto's complaint on appeal does not comport with the objection raised at trial.

A defendant's appellate complaint must comport with his trial objection or the defendant has waived appellate review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *see also Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that "[a]n objection stating one legal basis may not be used to support a different legal theory on appeal."). Soto's claim on appeal that Dr. Kellogg's testimony spoke to the truthfulness of C.L.'s testimony and was unnecessary because the jury could draw its own inferences and conclusions without her

---

[7]Dr. Anderst was unavailable to testify at trial.

testimony does not comport with his trial objection. *See Salinas*, 166 S.W.3d at 371. Accordingly, we hold Soto has waived any error.

### Rule 614 Violation

In his final point of error, Soto argues the testimony of C.L.'s mother, Gabrielle Knight, should have been struck from the record after it was discovered that she violated rule 614 of the Texas Rules of Evidence. Rule 614 states that, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." TEX. R. EVID. 614. Rule 614 is commonly referred to as "the Rule." The purpose of "the Rule" is to prevent witnesses from changing their testimony based on the testimony of another. *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Additionally, it improves the jury's ability to decipher false testimony by revealing inconsistencies in witnesses' testimony. *White v. State,* 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.).

Before opening statements, the State invoked "the Rule," and the trial court instructed the witnesses they could speak about the case only with their attorneys. Immediately after testifying, C.L.'s mother was observed in the hallway by a criminal defense attorney, who was not involved in the case, in what he believed to be a discussion of her testimony with C.L. This attorney proceeded to the courtroom intending to inform the State about what he had witnessed. Unable to make contact with the State's attorneys, the attorney reported his observation to Soto's attorney via a handwritten note. At the first opportunity, Soto raised the issue with the trial court. The court held a hearing with C.L. and his mother to determine if either witness had violated "the Rule."

At the hearing, the attorney testified he heard about thirty seconds of a conversation between C.L. and his mother. He stated he overheard C.L. asking Knight what she had testified

about, and responded with something about "the guy got thrown out of the house or something." He further stated it sounded as though the two were "talking about something about the wife, it sounded like the defendant, that he had left the house." Knight denied discussing her testimony with her son. The trial court determined no serious harm had occurred and advised the State to remind its witnesses of "the Rule."

Later, Soto objected when Knight was called to testify, alleging the previously asserted violation of rule 614. The objection was again overruled. Subsequently, in his motion for new trial, Soto again argued Knight's testimony should have been struck, and the failure to strike resulted in an unfair trial. The motion for new trial was denied.

It is within the trial court's discretion to allow the testimony of a witness who has violated rule 614. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, we presume the trial court acted within its power unless an abuse of discretion is shown. *Id.* In reviewing a trial court's decision to allow testimony after an alleged violation of "the Rule," the reviewing court looks at whether the defendant was "harmed or prejudiced by the witness's violation," i.e., was there injury to the defendant. *Id.* The court of criminal appeals has suggested two criteria for determining injury or prejudice: (1) whether the witness actually conferred with or heard testimony of other witnesses, and (2) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness she had conferred with or heard. *Id.* (citing *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989)).

The testimony of the attorney who allegedly overheard Knight speaking with her son conflicted with Knight's testimony. Thus, the trial court's determination of whether there was, in fact, a violation of "the Rule," turned on the credibility of the witnesses. *See Manzi v. State*,

88 S.W.3d 240, 254 (Tex. Crim. App. 2002) (noting reviewing courts defer to trial court's factual determination because trial court is "'Johnny-on-the-spot,' personally able to see and hear the witnesses testify[,]" and make determinations based on demeanor, tone of voice, hesitancy of speech, shoulder shrugs, jaw tightening, or clenched fists). Because the evidence was conflicting, it is unclear if an actual violation occurred, and the trial court could have determined there was, in fact, no violation. Accordingly, the trial court was within its discretion to admit Knight's testimony, believing she had not violated rule 614.

Soto argues Knight's testimony at the sentencing phase of the trial, wherein she discussed moving from her family's residence of ten years, corroborated C.L.'s testimony during the guilt phase of the trial. During her testimony, Knight was asked to explain the motivation and circumstances surrounding her family's move across town after Knight went to police about Soto. C.L. had previously testified about the move. We hold that although Knight's testimony about the move was the same as C.L.'s, this is insufficient to establish they conferred about that testimony so as to establish corroboration. The defense attorney did not testify he heard anything about the family moving; rather, he heard a discussion about someone being thrown out of a house. On this basis, we cannot say Soto was injured by the trial court's decision to allow Knight to testify; there was no abuse of discretion.

Soto also contends Knight's testimony opposing Soto's probation contradicted testimony by Soto's wife and father. In her testimony, Knight described C.L.'s fear that he would be sexually assaulted or physically harmed by Soto. Soto's wife and father attested to Soto's willingness to follow the rules and their desire to have Soto's help with his ailing mother. We see no contradiction; rather we see divergent opinions upon whether Soto should be given

probation. Moreover, there was nothing in the defense attorney's testimony to suggest a discussion between Knight and C.L. about this issue.

In sum, it was within the discretion of the trial court to allow Knight to testify during the punishment phase of the trial. *See Bell*, 938 S.W.2d at 50. Because the trial court could have found no violation of "the Rule," or that any violation failed to injure Soto, we hold there was no abuse of discretion and overrule Soto's final point of error.

**CONCLUSION**

We overrule Soto's issues, and affirm the trial court's judgment.


Marialyn Barnard, Justice

Do Not Publish